(No. 4852.　December 31, 1927.)

ORRIS ALETHA PACKARD, Widow of WILLIAM E.
PACKARD, Deceased, and FRANK L. PACKARD,
Minor Child of WILLIAM E. PACKARD, Deceased,
by ORRIS ALETHA PACKARD, His Guardian, Re-
spondents, v. W. A. O'NEIL, Appellant.

[262 Pac. 881.]

Action for Wrongful Death—Presumption in Favor of Self-pres-
ervation—Evidence—Sufficiency—Conflict—Public Highways
—Laws of the Road — Intoxication — Negligence — Statutory
Presumption—Police Power—Constitutional Law.

1.　Where there was substantial, although conflicting, evidence
from which jury could adopt either plaintiffs' or defendant's
theories regarding cause of automobile collision, verdict for plain-
tiffs will not be disturbed on ground that evidence is insuffi-
cient to sustain it.

2.　In action for death of motorcyclist resulting from collision
with automobile, allegation in complaint that defendant was
under influence of intoxicating liquors included condition of
being in state of intoxication and authorized court to give instruc-
tion, under Laws 1921, chap. 249, sec. 1, subd. 18, that, if de-
fendant was in state of intoxication he was conclusively deemed
to have been unable to control automobile, expression, "under
influence of intoxicating liquor," covering not only well-known
and easily recognized conditions and degrees of intoxication, but
any abnormal mental or physical condition which is result of
indulging in any degree of intoxicating liquors, and which tends
to deprive him of that clearness of intellect and control of him-
self which he would otherwise possess.

3.　In action for death of motorcyclist resulting from collision
with automobile, each party had right to have issues raised by
pleadings, when supported by any competent evidence, submitted
to jury under proper instructions.

4.　A doubt as to constitutionality of an act should be re-
solved in its favor, and, to declare it unconstitutional, it must
clearly appear to be so.

5.　Legislatures, by virtue of their inherent police powers and
plenary jurisdiction over roads, may make regulations govern-
ing conduct of owners and drivers of all vehicles.

6. Laws 1921, chap. 249, sec. 1, subd. 18, providing that person in state of intoxication is deemed conclusively to be unable to control and operate vehicle should not receive narrow or strained construction, but a common-sense interpretation should be given it in view of its manifest purpose, since guiding principle in interpretation of such statutes is ascertainment of legislative intent.

7. Purpose of Laws 1921, chap. 249, sec. 1, subd. 18, providing that persons in state of intoxication are deemed conclusively to be unable to control and operate vehicles, is to make persons who are in state of intoxication liable for any damage resulting from their acts while on public highways, effect and design being to thereby minimize danger of injuries to others.

8. Const. U. S., Amend. 14, sec. 1, was intended to prohibit arbitrary deprivation of life or liberty, or spoliation of property, but does not limit subjects on which police power of state may be lawfully exerted.

9. Establishment, maintenance and control of public highways and roads are embraced and included within "police powers" of states.

10. Laws 1921, chap. 249, sec. 1, subd. 18, providing that persons in state of intoxication are deemed conclusively to be unable to control and operate vehicles on highways *held* within definition of police powers of state and may be classed as reasonable regulation incident to right to control the use of public highways of state.

11. Laws 1921, chap. 249, sec. 1, subd. 18, providing that person in state of intoxication is deemed conclusively to be unable to control and operate vehicle on highways, specifying condition under which presumption of negligence shall arise, and providing for determination of liability by judicial proceedings, does not involve taking of property without due process of law, in violation of Const. U. S., Amend. 14, sec. 1.

12. Laws 1921, chap. 249, sec. 1, subd. 18, providing that any person in state of intoxication is deemed conclusively to be unable to control and operate vehicle on highways, *held* not wanting in due process of law nor repugnant to Fourteenth Amendment to constitution of United States.

13. Ordinarily, necessity for resorting to presumptions disappears when there is direct and positive evidence on subject.

14. In action for death of motorcyclist resulting from collision with defendant's automobile, giving instruction that there was presumption that motorcyclist was exercising due care for protection of his person at time of accident, but presumption was not

conclusive, where there were eye-witnesses who testified directly as to acts of motorcyclist, *held* not prejudicial error.

15.  In action for death of motorcyclist resulting from collision with defendant's automobile, refusal to take from jury's consideration question of defendant's alleged failure to render aid and assistance to motorcyclist after accident, *held* not error, where plaintiffs' counsel had stipulated that motorcyclist died as result of injuries received, since there was no intention evidenced in stipulation to eliminate charge of negligence predicated on failure of defendant to render assistance.

APPEAL from the District Court of the Third Judicial District, for Ada County.   Hon. Clinton H. Hartson, Judge.

Action for damages for personal injuries.   Judgment for plaintiff.   *Affirmed.*

Dean Driscoll, for Appellant.

The evidence is insufficient to show negligence on the part of the appellant in causing the accident or in aiding and assisting the deceased after the accident and to show that any lack of aid or assistance after the accident contributed to the death of Packard.

The court erred in instructing the jury that if the appellant was in a state of intoxication at the time of the acci-

Publisher's Note.

4.  See 6 R. C. L. 97; 25 R. C. L. 1000.

8.  Police power and the Fourteenth Amendment, see note in 25 Am. St. 682.  See, also, 6 R. C. L. 197.

10.  Constitutionality of statute making one fact conclusive evidence of another, see note in 51 A. L. R. 1149.

See Appeal and Error, 4 C. J., sec. 2836, p. 859, n. 8; sec. 3015, p. 1033, n. 37.

Constitutional Law, 12 C. J., sec. 222; p. 795, n. 27; sec. 440, p. 929, n. 19; sec. 962, p. 1197, n. 11; sec. 1008, p. 1233, n. 84.

Evidence, 22 C. J., sec. 25, p. 83, n. 59.

Highways, 29 C. J., sec. 409, p. 646, n. 40.

Motor Vehicles, 42 C. J., sec. 1156, p. 1284, n. 59 New.

Stipulations, 36 Cyc., p. 1291, n. 64.

Trial, 38 Cyc., p. 1626, n. 69.

dent, he was conclusively deemed to be unable to control and operate the automobile, for there was no issue on the subject since the complaint neither charges that the defendant was intoxicated nor that he was unable to control or operate the automobile. "Under the influence of intoxicating liquor" is distinguished from "state of intoxication." (*Freeburg v. State,* 92 Neb. 346, Ann. Cas. 1913E, 1101, 138 N. W. 143; *Commonwealth v. Lyseth,* 250 Mass. 555, 146 N. E. 18.)

There is no evidence that the appellant was in a state of intoxication and a state of sobriety is presumed. (1 Jones on Evidence, 2d ed., sec. 259.)

1921 Sess. Laws, chap. 249, subsection 18 of sec. 1, on which the instruction is based is unconstitutional because the legislature cannot create conclusive presumptions. (*Mobile J. & K. R. Co. v. Turnipseed,* 219 U. S. 35, 31 Sup. Ct. 136, 55 L. ed. 78, Ann. Cas. 1912A, 463, 32 L. R. A., N. S., 226; 12 C. J. 1234; Cooley's Const. Limitations, 7th ed., 526; *Wilson v. Locke,* 18 Ida. 582, 111 Pac. 247; *O'Neill v. United States,* 19 Fed. (2d) 322; *Elliott v. Tillamook,* 86 Or. 427, 168 Pac. 77; *Zeigler v. South. & N. A. R. Co.,* 58 Ala. 594; *State v. Atkinson,* 271 Mo. 28, 195 S. W. 741; *Shellabarger Elevator Co. v. Illinois Cent. R. R. Co.,* 278 Ill. 333, 116 N. E. 170, L. R. A. 1917E, 1011; *Eastman v. Jennings-McCrae Logging Co.,* 69 Or. 1, Ann. Cas. 1916A, 185, 138 Pac. 216.)

The court's instruction to the effect that the presumption of due care on the part of deceased was evidence and was to be weighed as such was error so long as there was direct evidence on the subject. (1 Jones, 2d ed., secs. 30–33, inc.; *Ryan v. Union Pacific R. R. Co.,* 46 Utah, 530, 151 Pac. 71; *Stumpf v. Montgomery,* 101 Okl. 257, 36 A. L. R. 971, 226 Pac. 65; *Shepherd v. City of Philadelphia,* 279 Pa. 333, 123 Atl. 790; *Stack v. General Baking Co.,* 283 Mo. 396, 223 S. W. 89.)

The court erred in not taking the question of whether the appellant rendered aid and assistance after the accident

from the jury and striking the testimony on the subject for the reason that not only evidence showed but the parties stipulated that appellant died as direct result of the injuries received in the accident, irrespective of what happened afterward.

Hawley & Hawley, for Respondents.

Where there is a conflict in the evidence, the finding of the jury will not be disturbed. (*Walker v. Idaho Lettuce Co.*, 44 Ida. 478, 258 Pac. 931; *Oregon Short Line R. Co. v. Mountain States Tel. & Tel. Co.*, 41 Ida. 4, 237 Pac. 281; Clark's Idaho Digest, p. 122.)

The legislature has the power to determine rules of substantive law, and 1921 Sess. Laws, chap. 249, subd. 18, is constitutional.

In determining the constitutionality of an act of the legislature, it is the duty of the court, if possible, to uphold the act. (*State v. Omaechevviaria*, 27 Ida. 797, 152 Pac. 280; *State v. Pioneer Nurseries Co.*, 26 Ida. 332, 143 Pac. 405; *Smallwood v. Jeter*, 42 Ida. 169, 244 Pac. 149.)

The statute expresses a rule of substantive law, not a rule of evidence. (*Hawkins v. Ermatinger*, 211 Mich. 578, 179 N. W. 249; *Jones v. Brim*, 165 U. S. 180, 17 Sup. Ct. 282, 41 L. ed. 677; *Hindman v. Oregon Short Line Ry. Co.*, 32 Ida. 133, 178 Pac. 837; *Bernardi v. Northern Pacific Ry. Co.*, 18 Ida. 76, 108 Pac. 542, 27 L. R. A., N. S., 796; *State v. Kasiska*, 27 Ida. 548, 150 Pac. 17; *Commonwealth v. Pentz*, 247 Mass. 500, 143 N. E. 322; *Brown v. Feeler*, 35 Ida. 57, 204 Pac. 659; *Sweetland v. Oakley State Bank*, 40 Ida. 726, 236 Pac. 538; *Ex parte Kneedler*, 243 Mo. 632, Ann. Cas. 1913C, 923, 147 S. W. 983, 40 L. R. A., N. S., 622; *Johnson v. Sergeant*, 168 Mich. 444, 134 N. W. 468; Huddy on Automobiles, p. 9; Babbitt, Law of Motor Vehicles, sec. 26; *Street v. Farmers' Elevator Co.*, 34 S. D. 523, 149 N. W. 429; *Yazoo & Miss. Valley Ry. Co. v. Bent*, 94 Miss. 681, 47 So. 805, 22 L. R. A., N. S., 821; 2 Wigmore on Evidence, pp. 1665, 1666.)

Common experience shows that intoxication makes one unable to properly control an automobile. (Babbitt, sec. 671, p. 460.)

The state has broad police power over highways. (*Commonwealth v. Kingsbury*, 199 Mass. 542, 127 Am. St. 513, 85 N. E. 848, L. R. A. 1915E, 264.)

The defendant in this case was not deprived of any constitutional right.

There is a presumption that one who is killed was exercising due care. (*Adams v. Bunker Hill etc. Min. Co.*, 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844; *Graves v. Northern Pacific Ry. Co.*, 30 Ida. 452, 166 Pac. 571; *Fleenor v. Oregon Short Line Ry. Co.*, 16 Ida. 781, 102 Pac. 897.)

The court did not commit error in refusing to give the appellant's requested instruction concerning appellant's delay in rendering assistance to the deceased.

ADAIR, Commissioner.—This action was commenced to recover damages growing out of an accident on a public highway, resulting in the death of one William E. Packard. From a judgment in favor of the widow and surviving child, which judgment was based upon a verdict of a jury, and from an order overruling a motion for a new trial, the cause is before this court on appeal.

At some time prior to 11:30 on the night of April 15, 1925, the appellant, an operator of a public autostage, was driving an automobile in an easterly direction from Boise, on what is designated as the Boise-Mountain Home road. At the same time, a motorcycle driven by Packard approached from the opposite direction with Boise as its destination. Attached to the motorcycle, on the right thereof, was a side-car in which a companion of Packard was riding. There were no passengers in the stage. Each motor vehicle was displaying headlights. Some distance east of Boise these two vehicles collided, and as a result Packard sustained fatal injuries from which he died ten days later.

In the complaint, it is charged that appellant was guilty

of divers acts of negligence in operating his automobile, such as driving at an excessive rate of speed; failing to keep on his own side of the road; driving while under the influence of liquor; and suddenly swerving to the left into the motorcycle. It is also alleged that he left the injured man lying on the ground after the accident, for an hour in the cold and wet, without rendering him assistance, and that thereby the deceased suffered a great loss of blood, which contributed to his ultimate death. All these allegations were positively and specifically denied, and appellant alleged that on the contrary the accident was due solely to the fact that as these vehicles were about to pass, the deceased turned his motorcycle, without warning, toward and thereby came in contact with the automobile, while that machine was being driven by appellant in a careful manner on its proper side of the road; and that appellant was without fault in the matter.

The verdict was a general one, and it is therefore impossible to determine on what particular charge or charges of negligence it was based. It is conceded that if there was sufficient evidence to justify the verdict because of any one act of negligence alleged, it should not be disturbed for the reason that proof of all the allegations was not made. (*Fleenor v. Oregon Short Line R. Co.,* 16 Ida. 781, 102 Pac. 897.) It is urged, however, that if there was any prejudicial error of law committed with reference to the admission of evidence, or instructions given or refused in connection with or relating to any one of these allegations of negligence, such error would be fatal to the judgment.

Appellant also maintains that there was no evidence whatsoever establishing any one of the acts of negligence stated in the complaint, but that if it be conceded that there was ample legal evidence to substantiate one or more of the acts charged, the errors of law assigned, even though affecting less than all of the specific acts of negligence set

45 Idaho—28

forth, are clearly sufficient in themselves to require a reversal and new trial.

It was the theory of respondents that the appellant turned his car abruptly to the left into the side of the motorcycle as these vehicles were passing, and while Packard was operating his motorcycle on the right-hand side of the road and going west in a place where he had a right and by law was required to be. The position taken by the defense, on the other hand, was that Packard, while passing the stage, which was being operated and driven in a lawful manner on its right side of the road going east, suddenly swerved his motorcycle into the left side of the automobile. Upon these two divergent theories, the case was tried and submitted to the jury.

[1] There were only two living eye-witnesses to the accident, one being the boy who accompanied the deceased, and the other the appellant himself. In addition to these, there were many other witnesses who later examined the tracks in the road, the vehicles, and the physical surroundings. It is true that there was no evidence offered in relation to some of the charges of negligence, but there was substantial although conflicting evidence from which the jury could adopt either of the above theories as to the direct cause of the collision. That body took the respondents' view that the appellant was the one who was negligent. Under such circumstances, it is a rule often enunciated by this court, that the verdict will not be disturbed on the ground that the evidence was insufficient to sustain it.

[2] Great stress is placed upon the assignment of error relative to the giving of the following instruction:

"It is unlawful for any vehicle to be moved, run, or operated on the highways of this state by any person unable to control and properly operate the same with due regard to the safety of the public and other vehicles; and in all cases any person in a state of intoxication is deemed conclusively to be unable to control and operate the same.

And if you find from the evidence that the defendant was, at the time of the accident, in a state of intoxication, then under the law he is conclusively deemed to have been unable to control and operate the automobile which he was driving.''

The instruction is attacked on the grounds that there was no issue in the pleadings, or evidence adduced at the trial, to warrant the submission thereof to the jury, and because the act of the legislature, chap. 249, Session Laws of 1921, and particularly sec. 1, subd. 18, thereof, of which said instruction is practically a *verbatim* copy, is unconstitutional.

On the point that there was no issue presented in the pleadings on which to base the instruction given, it is urged that the complaint alleged that the defendant was *under the influence of intoxicating liquor,* while the instruction related solely to a condition of being in a *state of intoxication,* which is asserted to be a vastly different proposition. The expression, ''under the influence of intoxicating liquor,'' covers ''not only all well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors and which tends to deprive him of that clearness of intellect and control of himself which he would otherwise possess. . . . . To be 'intoxicated,' one must generally be affected by alcoholic beverage to such an extent as to impair his judgment or his ability to operate the machine. He need not, however, have reached a state of drunkenness.' ''—Huddy on Automobiles, 6th ed., sec. 772.

The allegation in the complaint that the defendant was under the influence of intoxicating liquors, carried with it and included the condition of being in a state of intoxication. This averment was sufficient to authorize the court to give the instruction complained of.

[3] The only witness who testified to any indication that the defendant was intoxicated was the passenger in the side-

car, who stated that he smelled the odor of liquor on the breath of appellant soon after the accident. Certain actions of the appellant at the time and following the accident might tend to indicate a state of undue excitement, and a peculiarly unusual and unnatural attitude on his part, which might have been superinduced by the use of intoxicants. The great weight of the evidence, it is true, strongly negatived the fact that the appellant was in a state of intoxication. It cannot be said, however, that there was no evidence supporting this particular charge of negligence. Each party had the right to have the issues raised by the pleadings, when supported by any competent evidence, submitted to the jury under proper instructions.

The serious objection to the instruction is the contention that sec. 1, subd. 18, *supra,* from which it was taken, is unconstitutional because legislatures cannot create conclusive presumptions. Our attention has been directed to a long line of cases which hold that a legislative enactment declaring a certain thing or condition to constitute conclusive evidence, is unconstitutional, in that it is an unlawful attempt on the part of the law-making branch of the government to deprive parties of a judicial determination of their rights. Citation of these cases at length here would serve no useful purpose. This court has, under appropriate conditions, followed the reasoning of those cases, as evidenced by the opinion in *Wilson v. Locke,* 18 Ida. 582, 111 Pac. 247, wherein this language is used:

"It is well settled that the legislature does not possess the power to make or declare tax deeds conclusive evidence of a compliance with those requirements that are essential to the exercise of the taxing power, and that a statute that undertakes to make a tax deed 'conclusive evidence of a complete title, and to preclude the owner of the original title from showing the invalidity of such deed,' is unconstitutional, and would result in confiscation of property without due process of law."

This principle is correct when the statute only has for its purpose the proclamation of a rule of evidence. There are other Idaho statutes wherein conclusive presumptions have been declared. For instance, C. S., sec. 4820, makes a railroad company liable for all damages sustained by any person, caused by its trains, when a crossing signal is not given. This statute has been upheld as constitutional, and construed in effect to mean that where its provisions have been violated, the railroad company is conclusively presumed to have been negligent. (*Wheeler v. Oregon R. & N. Co.,* 16 Ida. 375, 102 Pac. 347; *Burrow v. Idaho & Washington N. Railroad,* 24 Ida. 652, 135 Pac. 838.)

C. S., sec. 4814 requires a railroad company to fence its right of way at certain places, and makes it liable for all injuries to livestock, whether the persons operating the train are otherwise negligent or not. This court has held that said sec. 4814, *supra,* is constitutional, in that it "is a police regulation, adopted to protect human life and property for the benefit of the general public, and not for the sole benefit of adjoining or contiguous land owners." (*Johnson v. Oregon Short Line R. Co.,* 7 Ida. 355, 63 Pac. 112, 53 L. R. A. 744; *Hindman v. Oregon Short Line R. Co.,* 32 Ida. 133, 178 Pac. 837.)

Again, under sec. 5434, it is declared that every transfer of personal property unaccompanied by immediate delivery, is conclusively presumed to be fraudulent as against certain persons afterward acquiring interests in the property. While the constitutionality of this last section has not been passed upon by this court, it has been construed numerous times, including the late case of *Millick v. Stevens,* 44 Ida. 347, 257 Pac. 30.

These statutes are mentioned here simply as illustrative of the fact that, in Idaho, various laws making certain acts or things conclusive presumptions have been enacted and upheld, and because of their analogy in principle to the section now under consideration.

[4] This court, speaking through Mr. Justice Taylor, in *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149, reiterated a fundamental rule of law in these words:

"A doubt as to the constitutionality of an act should be resolved in its favor, and to declare it unconstitutional, it must clearly appear to be so. (*Ingard v. Barker,* 27 Ida. 124, 147 Pac. 293; 25 R. C. L., p. 1000, sec. 243.) It is the duty of the court to adopt such construction as will sustain the statute, if its language will permit."

In *Stack v. General Baking Co.,* 283 Mo. 396, 223 S. W. 89, it is held:

"It is a fundamental proposition that laws . . . . are presumed passed in a spirit of justice and for the welfare of the community. It follows they should be so interpreted, if possible, as to further that purpose."

[5] The object of the law of the road is to prevent or minimize collisions and other accidents. Automobilists have the right to use the roads, but this right is not so sacred that it is beyond the control of the state. The right to use the public ways of the state, and the control of that use, being public in its nature, is a special subject for regulation under the police power of the state. This legislative control may be exercised by the enactment of statutes governing the liabilities of drivers of vehicles of all kinds, where the purpose to be subserved is the safety of travelers generally on the roads. There is no dissent from the rule that legislatures, by virtue of their inherent police powers and plenary jurisdiction over roads, may make regulations governing the conduct of owners and drivers of all vehicles.

[6] The fallacy of the position taken by appellant, as to the unconstitutionality of sec. 1, subd. 18, *supra,* lies in the fact that he fails to look back of the language contained in the section, to the real intent and purpose of the legislature to determine the object and effect of the law. Upon its face, it apparently purports to prescribe a rule of evidence, but an analysis of the section discloses that it is a proclamation

of substantive law, and not a rule of evidence at all. The guiding principle in the interpretation of such statutes is the ascertainment of the legislative intent. A law should not receive a narrow or strained construction, but a common-sense interpretation should be given it, in view of its manifest purpose.

[7] Here, the intent of the law-makers is plain. They were attempting to prohibit any person from driving a motor vehicle, when, by reason of having imbibed intoxicants, to whatever extent he may have so indulged, he had thereby reached a state which rendered him a danger to the safety of others. This section does not provide that every person who has tasted liquor shall be deemed incapable of operating a motor vehicle on the road. It does not attempt to define the degree of intoxication necessary to raise the presumption of incapacity. The legislature undoubtedly recognized the fact that liquor affects various persons differently, some being incapacitated by the use of a very small quantity, while others would show little or no effects from the use of a similar amount. It is left to judicial determination in each particular case whether the driver was in fact in a state of intoxication at the time of the accident. It is the clear purpose of the act to make persons who are in a state of intoxication liable for any damage resulting from their acts while on the public highways, the effect and design of thus penalizing them being to thereby minimize the danger of injuries to others.

[8, 9] The first section of the Fourteenth Amendment to the constitution of the United States, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws," was undoubtedly intended to prohibit an arbitrary deprivation of life or liberty, or spoliation of property. (*Barbier v. Connolly*, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. ed. 923.) But it does not limit, nor was it designed to limit, the sub-

jects upon which the police power of a state may be lawfully exerted. (*Minneapolis & St. L. R. Co. v. Beckwith,* 129 U. S. 26, 9 Sup. Ct. 207, 32 L. ed. 585.) The establishment, maintenance and control of public ways and roads is embraced and included within the police powers of the states. (*New Orleans Gas Light Co. v. Louisiana Light & H. P. & Mfg. Co.,* 115 U. S. 650, 6 Sup. Ct. 252, 29 L. ed. 516.)

[10, 11] The section of the laws of the road here in question comes squarely within the definition of police powers, and may be classed as reasonable regulation, incident to the right to control the use of the public highways of the state. This section of the law proceeds upon the theory that the state has the right, in the exercise of its police powers, to make any person absolutely responsible for any damage he may do, while operating an automobile, which is recognized as a dangerous instrumentality, when improperly or carelessly driven, and especially so when under the control of a person not in his normal condition, because of the exhilaration or excitement of intoxicants. In effect, the legislature has declared that the driving of an automobile by a person in a state of intoxication, is so likely, if great precautions are not taken, to result in injury to others, that where damage does result under such conditions, there shall be no controversy over the question of liability, but there shall arise an absolute legal presumption of negligence. This statute creates a conclusive presumption of negligence, not as a principle of evidence, but for the express purpose of creating, defining and regulating the rights of persons traveling the public highways of the state. The legislators evidently thought that if an automobile was operated or driven under such conditions, and thereby caused an injury, there might be difficulty in establishing lack of due care on the part of the person in charge thereof, and that this would leave room for so much question, that the conclusive presumption of negligence ought to

prevail. Where, as here, the statute specifies the condition under which the presumption of negligence shall arise, and there is provision for determination of liability by judicial proceedings, such presumption does not amount to a taking of property without process of law. This section is simply a declaration of substantive law.

"On the one hand, so far as a so-called rule of conclusive evidence is not a rule of Evidence at all, but a rule of *substantive law*, it is clear that the Legislature is not infringing upon the prerogative of the Judiciary . . . . "—2 Wigmore on Evidence, 2d ed., sec. 1353.

[12] Section 1, subd. 18, *supra*, of the Idaho road laws, is not wanting in due process of law, nor repugnant to the Fourteenth Amendment to the constitution of the United States, and the instruction based thereon was not erroneous.

[13, 14] Appellant contends that the court erred in instructing the jury as follows:

"There is, until the contrary is proven, a presumption that the deceased, William E. Packard, was exercising due and proper care for the protection of his person and the preservation of his life at the time of the accident; this presumption arises from the instinct of self-preservation and the disposition of men to avoid personal harm. This presumption is not conclusive, but is a matter to be considered by the jury in connection with all the other facts and circumstances of the case, in determining whether or not the deceased, William E. Packard, was guilty of contributory negligence at the time of the accident."

It is urged that the instruction to the effect that the presumption of due care was evidence, and was to be weighed as such, was erroneous since there were eye-witnesses who testified directly as to the acts of the deceased. (1 Jones on Evidence, 2d ed., secs. 30 to 33, inc.; *Ryan v. Union Pacific R. Co.*, 46 Utah, 530, 151 Pac. 71; *Shepherd v. City of Philadelphia*, 279 Pa. 333, 123 Atl. 790.) Ordinarily,

the necessity for resorting to presumptions disappears when there is direct and positive evidence on the subject.

In *Fleenor v. Oregon Short Line R. Co.*, 16 Ida. 781, 102 Pac. 897, we find this language:

"The presumption which arises in favor of the instincts of self-preservation and the known disposition of men to avoid injury and personal harm to themselves is sufficient to constitute *prima facie* evidence that the person killed was at the time of the accident free from contributory negligence." (Citing many cases.)

"The evidence of the eye-witnesses tended very strongly to refute this presumption, and to show that as a matter of fact Fleenor did not look or listen," etc.

While it does not appear from a reading of the above decision that an instruction similar to that under consideration here was given, and while the statement quoted may have been *obiter dictum*, yet with eye-witnesses actually testifying, this court said such presumption existed in that case.

It will be noted that in the instruction complained of, there is the qualification that this presumption arises or continues until the contrary is proven. While this instruction probably should not have been given, since there were eye-witnesses to the accident, still the jury were expressly cautioned therein that the presumption did not exist when the contrary was proven; that it was not conclusive; and that it was limited in its application to the issue of contributory negligence on the part of Packard. There was no attempt, at any stage of the proceedings, to prove contributory negligence on the part of either party. There was a square-cut issue as to which of these two men caused the vehicles to collide. One or the other, under the evidence, was entirely blameless. If Packard was driving his motorcycle on his right side of the road, and continued to do so as the vehicles approached, it is inevitable that appellant must, by turning his automobile over to the wrong side of the road, have been the only one guilty of negli-

gence. If the converse of these facts is true, Packard alone was responsible. There was nothing that either of these parties did which caused or contributed to the collision, except that one or the other swerved from his proper side of the road and drove his vehicle into the other. No prejudicial error was committed by the court in giving this instruction.

[15] Finally, appellant urges that the court erred in refusing to strike certain testimony, and in not, by proper instructions, taking from the consideration of the jury the question of the alleged failure of appellant to render aid and assistance to the injured man after the accident. It is contended that the parties had stipulated during the trial that Packard died as a direct result of the injuries received in the accident, irrespective of what happened thereafter. The stipulation referred to is contained in the following statements of counsel:

"Mr. Hawley: Will you stipulate that as a result of the injuries received at the collision that Mr. Packard died on the 25th day of April, 1925?

"Mr. Driscoll: Yes, but not admitting any liability or responsibility.

"Mr. Hawley: I am not asking that.

"Mr. Driscoll: I am simply admitting that as a result of the accident he died."

Later, this stipulation was brought into question, and its meaning discussed by court and counsel. An examination of the record, and a fair interpretation of the wording of the agreement, make it apparent that there was no intention evidenced therein to eliminate the charge of negligence predicated upon the failure of appellant to render assistance to the injured man. The court did not err in denying the motion to strike, nor in refusing the requested instruction covering this phase of the case.

No prejudicial error having occurred during the trial, and the verdict being supported by substantial and compe-

tent evidence, we recommend that the judgment be affirmed, and that respondents recover their costs.

Babcock, C., concurs.

The foregoing is approved as the opinion of the court. The judgment and order overruling defendant's motion for a new trial, are affirmed. Costs to respondents.

Wm. E. Lee, C. J., and Givens and T. Bailey Lee, JJ., concur.

Budge and Taylor, JJ., did not sit at the hearing, and took no part in the decision.